UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHNNIE HENDERSON,
   Plaintiff,

vs.                                       No. 07-1279,

ELDON KENNELL,
   Defendant

SUMMARY JUDGEMENT ORDER

     This cause is before the court for consideration of the plaintiff and defendant's motions for summary judgement. [d/e 21, 26, 33].

I. BACKGROUND

     The plaintiff filed his complaint pursuant to 42 U.S.C. §1983 against Defendant Reverend Eldon Kennell claiming his constitutional rights were violated at the Pontiac Correctional Center. Specifically, the plaintiff alleges that Defendant Kennell violated his First and Fourteenth Amendment rights when he repeatedly refused to allow the plaintiff to change his religious designation to Islam.

     The court notes that although the plaintiff has filed a document entitled motion for summary judgement, he has not complied with the local or federal rules for filing a dispositive motion. Fed.R.Civ. P. 56, ILCD Rule 7.1-2(D)  Instead, the six page document is actually a response to the defendant's motion for summary judgement. [d/e 26]. In addition, the plaintiff has recently filed a "Supplemental Motion for Summary Judgement." [d/e 33]  This document was filed nearly a year after the dispositive motion deadline and also does not follow the relevant rules. Therefore, the court will deny both motions [d/e 26, 33], but will consider these documents as further responses to the defendant's motion for summary judgement.

II. FACTS

     Defendant Eldon Kennell says he is employed as a Chaplain at the Pontiac Correctional Center. His duties include handling "requests pertaining to the religious and spiritual needs" of the inmates. (Def. Mot, Kennell Aff, p. 1). Kennell says his actions must be in compliance with Illinois Department of Corrections (IDOC) Rules.

     Department Rule 425.30 allows inmates to change their religious affiliation by submitting a written request to the Chaplain. The rule states that the request may be refused if

the Chaplain determines it was made for reasons other than religious belief. "That determination may be based, among other matters, upon the frequency of changes or a pattern of changing religious affiliation prior to a particular faith group's scheduled holiday or celebration." (Def. Mot, Kennell Aff, p. 2).

Department Rule 425.70 also states that to receive a dietary modification for a specific religious holiday, an offender must submit a written request to the Chaplain at least 45 days before that holiday. The request must also contain "verification that the offender is a member of the faith group requiring the modification and the specific requirements of the modification." (Def. Mot, Kennell Aff, p. 2).

Kennell says on February 23, 2007, he received a letter from the plaintiff stating that he had ordered a gold chain with an Islamic medallion, but the personal property department would not allow him to have it. (Def. Mot, Kennell Aff, p. 2) The next day, the plaintiff wrote Kennell a second letter asking him to confirm with property personnel that the medallion he ordered was a religious medallion.

Kennell says he responded with a memorandum to the plaintiff and confirmed that the medallion was an Islamic medallion. However, Kennell stated that while the plaintiff had declared his religious designation to be Al-Islam (Muslim) in 1999, he had successfully changed his religious designation to Christian in 2002. (Def. Mot, Feb. 24, 2007 Memo). Kennell said the plaintiff could not keep a medallion that was not commensurate with his claimed religious designation. (Def. Mot, Kennell Aff, p. 2) Furthermore, Kennell told the plaintiff that he would not change the plaintiff's religious designation just so he could receive the medallion. (Def. Mot, Feb. 24, 2007 Memo).

Kennell says about one month later, he received a request from he plaintiff to change his religious affiliation back to Al-Islam. Kennell also received a letter from the plaintiff asking that his religious affiliation be changed to "other" so he did not have to "keep going through the changes of one religion to the next. The word 'other' should cover all the above. Am I right?" (Def. Mot, March 29, 2007 ltr).

Once again, Kennell responded with a memorandum. Kennell stated that the plaintiff's religious designation made little difference while he was housed in segregation.

> I am reluctant to grant a change of religion because there is so much indecision among offenders. If you chose to remain here after your release from Seg, we can consider changing your religious designation. In the mean time you can be what ever you chose to be without regard to what is indicated on your ID. (Def. Mot, March 29, 2007 memo).

2

Kennell then denied the plaintiff's request to change religious affiliation at that time.

On August 7, 2007, the plaintiff again sent a letter to Kennell asking to change his religion to Al-Islam so he could participate in the upcoming Ramadan celebration that was scheduled to begin on September 13, 2007. (Def. Mot, Kennell Aff, p. 3, Aug. 7, 2007 ltr).

Kennell responded the next day by denying the request. Kennell said the IDOC did not allow an inmate to change his religion "in order to receive a special favor." (Def. Mot., Aug. 8, 2007 Memo) "Consequently, your request to have your religion changed in order that you can participate in Ramadan is denied per Institutional Rules." (Def. Mot, Aug. 8, 2007 Memo).

Kennell says although he did not mention it in his memorandum, the plaintiff's request was also submitted less than 45 days prior to the start of Ramadan, and therefore was not in compliance with Department Rule 425.70. (Def. Mot, Kennell Aff. p. 3).

Kennell says he "had legitimate doubts about the sincerity of (the plaintiff's) religious beliefs and his desire to change his religious practices." (Def. Mot, Kennell Aff, p. 3). Kennell says he based his opinion on the number of requests received from the plaintiff and his letter asking if he could just be designated as "other" so he could continue to change between religions. (Def. Mot, Kennell Aff, p. 3).

> The three requests that I received from (the plaintiff) to change his religion from Christian to Al-Islam were all predicated upon his desire to gain something. At no time in his correspondence did (the plaintiff) mention his spiritual needs or beliefs, nor did he pursue his request to change his religious affiliation when his immediate goal was not achieved. (Def. Mot, Kennell Aff, p. 3-4).

Kennell says all of his denials were of the plaintiff's requests were based on the plaintiff's "non-compliance" with IDOC rules. (Def. Mot, Kennell Aff, p. 4).

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

IV.  ANALYSIS

A. FIRST AMENDMENT

The defendant argues that the plaintiff has failed to show that he violated the plaintiff's First Amendment right to freedom of religion. "An inmate retains the right to exercise his religious beliefs in prison." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir.2005). To prove a violation of the First Amendment, the plaintiff must show a "substantial burden" on a "central religious belief or practice." *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699(1989). If the plaintiff makes this showing, the defendant must demonstrate that the infringement on the plaintiff's religion was "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.78, 89(1987).

In determining whether government conduct is reasonably related to a legitimate penological interest, the court considers four factors: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) whether accommodation of the asserted constitutional right would have a negative impact on guards, other inmates and the allocation of prison resources; and (4) whether obvious, easy alternatives exist as evidence that the regulation is not reasonable. *Turner,* 482 U.S. at 89-91.

The court first notes that the plaintiff has clarified his claim in his response to the dispositive motion. For instance, the plaintiff says not all of his letters were requests to change his religious designation. The plaintiff says he did send letters to the Chaplain in February of 2007 regarding his medallion, but he "never requested to change his religion." [d/e 33, p. 9]. The Chaplain understandably assumed this was the plaintiff's intention since the plaintiff made reference to his religious designation within the prison, said the medallion was a religious medallion and stated that he needed the Chaplain's approval to receive it. Nonetheless, the plaintiff has clarified his intentions and therefore this incident is not related to any claim that the plaintiff was denied the free exercise of his religion. The court does note that this information is relevant to the issue of how often the plaintiff asked to change his religious designation.

Therefore, the plaintiff's first request to change his religious designation was March 28, 2007 when he asked to change his religion back to Al-Islam. The one sentence request provided no further information until the plaintiff sent a follow-up letter the next day asking to change his religious designation to "other" so he did not have to keep changing back and forth. Clearly, the plaintiff has not shown a substantial burden on a central religious belief or practice, since he indicates he wants to continue to switch between religions.

In addition, the defendant responded that the plaintiff was in segregation and his religious designation made little difference. The defendant told the plaintiff he could practice the religion on his choice while in segregation and discuss the matter later with the Chaplain. The plaintiff has not demonstrated that he was any burden placed on his ability to practice his religion.

The only other request the plaintiff made to change his religion was on August 7, 2007. Again, the plaintiff submitted a one sentence request asking to change his religion to Al-Islam, so he could "participate in the holy month of Ramadan this coming season." (Def. Memo, Plain. Note). The defendant therefore denied the request because he believed the plaintiff was asking to change his religion "in order to receive a special favor." (Def. Mot., Aug. 8, 2007 Memo). In addition, the plaintiff's request did not comply with Illinois Department of Corrections Rules which state that a request such as this must be submitted at least 45 days before the start of Ramadan.

The Department of Corrections has obvious reasons for preventing inmates from switching religions frequently and without following the specified rules. Correctional facilities have limited resources and must be able to plan on the number of inmates who may participate in religious services and holidays as well as those which require a specific religious diet. Prison officials also have a penological interest in maintaining control and order over inmates who gather for religious purposes and have an interest in preventing manipulation and abuse of the religious accommodations provided by a facility.

Based on the request submitted by the plaintiff and his failure to follow the specified guidelines, the defendant has demonstrated a legitimate penological interest in denying this request.  The court notes the plaintiff has not presented any evidence that he was prevented from participating in any other methods of practicing the Islamic faith such as praying, studying literature, consulting informally with other members of Al-Islam or corresponding with Islamic faith groups outside the facility.  The plaintiff has presented no evidence that he was prevented from changing his religious designation at the conclusion of Ramadan, nor that he made any further requests.  There was a valid connection between the time frame requirement for changing religious designations just prior to the start of a holiday and legitimate government interests concerning security and resources.  There were alternate means for the plaintiff to practice his religion and allowing requests like the plaintiff's could have a negative impact on prison resources.   The motion for summary judgement on this claim is granted.

B. FOURTEENTH AMENDMENT.

The defendant also argues that the plaintiff has failed to demonstrate that he violated the plaintiff's equal protection rights under the Fourteenth Amendment.  A person bringing a action under the Equal Protection Clause must show *intentional* discrimination against him *because of his membership in* a *particular class,* not merely that he was treated unfairly as an individual." *Huebschen v. Dept. of Health and Social Serv.*, 716 F.2d 1167, 1171 (7th Cir. 1983) (emphasis added).  "The decision maker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *citing Personnel Admin. v. Feeney*, 442 U.S. 256, 279 (1979) (*footnote omitted*).

The plaintiff says he was not allowed to change his religious designation from Christianity to Al-Islam, but inmates wishing to change from Al-Islam to Christianity were allowed to make the change.   The plaintiff provides no evidence in support of this claim.  The plaintiff's own conclusory allegations unsupported by specific facts will not suffice to rebut evidence supporting a summary judgment motion. *Payne v Pauley,* 337 F.3d 767, 773 (7th Cir. 2003).  The motion for summary judgement on this claim is granted.

**IT IS THEREFORE ORDERED that:**

**1) The plaintiff's motions for summary judgement are denied. [d/e 26, 33].  The plaintiff has not filed a proper motion for summary judgement, but has instead filed a response to the defendant's dispositive motion.**

**2) The defendant's motion for summary judgement is granted pursuant to  Fed. R. Civ. P. 56. [d/e 21]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**3) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.** *See* **Fed. R. App. P. 24(a)(1)c. If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**4) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**5) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**6) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 4th day of September, 2009.


                              s\Harold A. Baker
           _____
                             HAROLD A. BAKER
                      UNITED STATES DISTRICT JUDGE